UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SUZANNE E. CANNON, and <br> JEFFREY A. CANNON, JR., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED GUARANTY RESIDENTIAL <br> INSURANCE CO., <br> KOCH LAW FIRM, P.C., and <br> JASON MCAULTY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 1:16-cv-00095-RLY-DKL |

**ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

In this action, Plaintiffs Suzanne E. Cannon and Jeffrey A. Cannon, Jr. ("Plaintiffs") allege in Counts I, III and IV, that United Guaranty Residential Insurance Co. ("United") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and in Counts II and V, violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681 *et seq*. United has moved for summary judgment as to each Count. In addition, Plaintiffs assert in Count IV that the Koch Law Firm, P.C. ("Koch") and Jason McAuley (collectively, "Koch Defendants") violated the FDCPA. The Koch Defendants have moved for summary judgment on Count IV.

For the reasons set forth below, United's Motion for Summary Judgment is **GRANTED**; and the Koch Defendants' Motion for Summary Judgment is **GRANTED**.

1

## I.   Factual Background

As this motion is for summary judgment brought by the Defendants, the court must take the facts and all reasonable inferences that arise therefrom in the light most favorable to Plaintiffs.  *Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).

United is a private mortgage insurance company that provides an array of insurance products and services, including first-lien mortgage guaranty insurance. (Affidavit of Dale Priddy ("Priddy Aff.") ¶ 4).  It also insures lenders against the increased risk of borrower default related to mortgages with high loan-to-value ratios. When a borrower on an insured loan fails to make their mortgage payments, the lender files an insurance claim with United and, if allowed, United then issues a claim payment covering the lender's loss.  Upon making a claim payment, United attempts to recoup its payment to the lender pursuant to the terms of the insurance policy.  United does not furnish information to credit reporting agencies.  (*Id.*).

United insured Plaintiffs' mortgage under United Guarantee Certificate # 12059506 (the "Policy").  (*Id.* ¶ 9).  On or about April 1, 2011, Wells Fargo instituted foreclosure proceedings against Plaintiffs in the Hamilton Superior Court, under Cause Number 29D03-11-8-MF-008642.  Wells Fargo obtained summary judgment in its favor on July 26, 2012, and a Decree of Foreclosure was entered.  The mortgaged property was sold at a Sheriff's sale on November 8, 2012.

Following the sale of the property, on September 4, 2013, Wells Fargo submitted a claim under the Policy; United paid $25,488.77 to Wells Fargo in accordance with the Policy.  (Priddy Aff. ¶ 10).

>Pursuant to the Policy, United was entitled to recoup its payments thereunder:
>
>(a) (i) The Company shall be subrogated, as set forth in Section 6.2(a)(ii) to the Insured's rights of recovery against the Borrower and any other Person relating to the Loan or to the Property, unless such subrogation rights are prohibited as a matter of law or pursuant to Section 6.2(b)(i) the Company has determined not to pursue such rights. The Insured shall execute and deliver at the request of the Company such instruments and papers and undertake such actions as may be necessary to transfer, assign and secure such rights. The Insured shall refrain from any action, either before or after payment of a Loss hereunder, that shall prejudice such rights.

(*Id.* ¶¶ 9, 11; *Id.* Ex. A at 30). However, pursuant to Indiana law, United was only permitted to collect the deficiency balance from the debtor, which in this case was $21,161.79. United then sought to recoup the $21,161.79 from Plaintiffs. (Priddy Aff. ¶ 11).

Specifically, on October 14, 2013, United sent a letter to Plaintiffs regarding the amount they owed and demanded that Plaintiffs reimburse United $21,161.79 that it had paid under the Policy. (*Id.* ¶ 12). The letter stated, in part,

>This letter concerns the deficiency remaining on the above-referenced loan. As the private mortgage insurer of the loan, United Guaranty Residential Insurance Company ("United Guaranty") has paid a claim on behalf of its insured, FHLMC, and has been assigned and/or is fully subrogated to the rights of its insured to assert claims against you as a result of your default in payment on the loan and the resulting deficiency after the foreclosure sale.

(Filing No. 42-2 at 2). Plaintiffs sent United a letter on October 16, 2013, that sought validation of the debt; however, United has nothing in its records indicating that it received such a letter, (Priddy Aff. ¶ 13), and never responded to Plaintiffs.

United hired third-party Regional Adjustment Bureau ("RAB") to obtain the amount of its payment. On November 1, 2014, RAB sent Plaintiffs a letter to collect the

debt.  On November 11, 2014, Plaintiffs sent a letter to RAB that sought validation of the debt.  On November 11, 2014, RAB responded to Plaintiffs' validation request with a letter that indicated when the debt was incurred and the services provided.  In addition, RAB sent Plaintiffs a "Deficiency Calculation Form" that explained how it calculated the amount due; and provided Plaintiffs with copies of the foreclosure decree, Sheriff's deed, and Clerk return.  (Filing No. 1).

On April 27, 2015, third-party O'Rourke Law Firm, LLC ("O'Rourke") sent Plaintiffs a letter to collect the $21,161.79 owed to United.  On May 5, 2015, Plaintiffs wrote O'Rourke to request validation of the debt.  On May 20, 2015, O'Rourke responded by letter that detailed how the amount owed was calculated and how the debt was incurred.  Included with the letter were: the Sheriff's deed, the Clerk return, and the summary judgment entry and decree of foreclosure.  (Filing No. 1).

On or about July 1, 2015, United retained Koch to collect the debt in the amount of $21,161.79.  (Jason McAuley Affidavit ("McAuley Aff.") ¶ 5).  On July 2, 2015, the Koch Defendants sent each Plaintiff a letter demanding payment in the amount of $21,161.79.  On July 7, 2015, Plaintiffs wrote the Koch Defendants and requested validation of the debt.  Upon receipt of the letter, the Koch Defendants ceased collection activity on Plaintiffs' file.  On July 13, 2015, the Koch Defendants responded to Plaintiffs with a letter that detailed the calculation of the amount owed and how the debt was incurred.  The Koch Defendants also included the Sheriff's deed, the Clerk return, the Summary Judgment Entry and Decree of Foreclosure, and the United Explanation of Benefits.  *Id.* at ¶¶ 6-9.

The Koch Defendants did not furnish any information to any consumer reporting agencies regarding Plaintiffs. The Koch Defendants do not furnish any information to any of the consumer reporting agencies regarding debts they attempt to collect. (McAuley Aff. ¶¶ 10-11).

## II. Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing

5

reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)).  Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party.  *See Anderson*, 477 U.S. at 255; *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (reversing summary judgment for defendant in excessive force case).

### III.    Plaintiffs' Claims Against United

#### A.    Fair Debt Collection Practices Act Claims (Counts I, III, & IV)

Relying exclusively on the original letter United sent them, Plaintiffs argue that United is a debt collector under the FDCPA because it was collecting on a defaulted debt owed to Federal Home Loan Mortgage Corporation, which is a debt collector.  (citing *inter alia*, *Munoz v. Pipestone Fin., LLC*, 397 F. Supp. 2d 1129 (D. Minn. 2005)).  Further, Plaintiffs appear to assert that United is liable for the acts of RAB in collecting the debt.  (citing *Martinez v. Albuquerque Collection Servs.*, 867 F. Supp. 1495 (D.N.M. 1994)).  Plaintiffs' arguments fail because United is not a "debt collector" as that term is defined in the FDCPA.

The FDCPA regulates a debt collector, which is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  However, a creditor collecting its own debts is included in this

definition if it "uses any name other than his own which would indicate that a third person is collecting or attempting to collect [the] debt." *Id.* The statute provides exclusions, which include "any person while acting as a debt collector for another person . . . related by common ownership or affiliated by corporate control . . . and if the principal business of such person is not the collection of debts," 15 U.S.C. § 1692a(6)(B), and "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). In this case, Plaintiffs present no evidence that United is in the business of collecting debts for others. Further, Plaintiffs present no evidence that either Federal Home Mortgage Corporation or Wells Fargo is a "debt collector" or that United is or was "related [to either company] by common ownership or affiliated by corporate control," as would be required by the statute.

*Munoz v. Pipestone Financial, LLC*, does not help Plaintiffs. In *Munoz*, Pipeline was the third purchaser of Munoz's debt. Pipeline had contracted with third-parties to refer some debts for collection and for which service Pipeline would pay the third parties a contingency fee. 397 F. Supp. 2d at 1133. Pipeline moved for summary judgment and argued that it was not a debt collector because it never directly communicated with Munoz. *Id.* The *Munoz* court stated that "entities that purchase defaulted debt for collection are debt collectors under the FDCPA," and because Pipeline maintained ownership of the debt, it could be liable for attempts by its third-party collectors to collect

from Munoz.  *Id.* (citing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)).

Here, Plaintiffs present no evidence that either Federal Home Mortgage Corporation or Wells Fargo is a debt collector and retained any control over the debt. Plaintiffs also present no evidence that United purchased any debt.  The uncontroverted evidence is that United insured Wells Fargo for any losses it might incur if Plaintiffs defaulted.  Under the terms of the Policy, United was a subrogee of Wells Fargo and could seek recovery from Plaintiffs in the amount it paid under the Policy to Wells Fargo. In other words, United contacted Plaintiffs to collect money Plaintiffs owed United. Because United used its own name when it contacted Plaintiffs, it is not a debt collector under § 1692a(6).

*Martinez v. Albuquerque Collection Services*, does not help Plaintiffs either. Plaintiffs appear to cite the case for the proposition that debt collectors are responsible for the debt collection practices of their agents and, therefore, United should be liable for the actions of RAB.  (citing *Martinez*, 867 F. Supp. at 1502)).  But, as discussed above, Plaintiffs have failed to put forth evidence that United is a debt collector; therefore, it would be unfair to hold United vicariously liable for any alleged violation of the FDCPA by RAB or any other debt collector it hired.  *Accord Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) (adopting the reasoning of the Sixth Circuit that it would not make sense to impose vicarious liability under the FDCPA on a company that was not a debt collector).

For these reasons, summary judgment in favor of United is appropriate on Plaintiffs' claims under the FDCPA in Counts I, III and IV of the Complaint.

### B.     Fair Credit Reporting Act Claims (Counts II & V)[1]

Again relying on *Martinez*, Plaintiffs appear to argue that United is vicariously liable for the actions of RAB generally. (Filing No. 42, at pp. 4-5, citing *Martinez*, 867 F. Supp. 1495).  Then, without citation to any evidence, Plaintiffs assert that RAB reported erroneous information to the credit reporting agencies for fifteen months. (*Id.*).  Plaintiffs claim that United admitted that it never investigated the disputed debt beyond its own calculations or attempted to reach the underlying creditor as required; therefore, it violated its duty to report accurate information under 15 U.S.C. § 1681s-2(b).  (*Id.* at 5 (citing *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010)).

Although Plaintiffs affirmatively state that Count II is brought under § 1681s-2(b) of the FCRA, the provision that they set out in their brief is § 1681s-2(a)(B).  (Filing No. 42 at 4).  Any claim brought by Plaintiffs under § 1681s-2(a) fails as a matter of law because "only the Federal Trade Commission can initiate a suit under that section." *Lang v. TCF Nat'l Bank*, 338 Fed. Appx. 541, 544 (7th Cir. 2009) (citing 15 U.S.C. § 1681s-2(c)).  *See also Woods v. Wells Fargo Fin. Bank*, 753 F. Supp. 2d 784, 792 (S.D. Ind. 2010).

---

[1] Although there was some confusion as to which statutes Plaintiffs intended to rely upon with respect to Count II, their response to United's Motion for Summary Judgment makes clear that Count II is pled under 15 U.S.C. § 1681s-2(b), which is part of FCRA.  (Filing No. 42 at 4).

Plaintiffs may bring a claim pursuant to § 1681s-2(b), which requires furnishers of information to credit reporting agencies to conduct an investigation with respect to disputed information on a credit report. 15 U.S.C. § 1681s-2(b). United presented evidence that it does not furnish information to credit reporting agencies. (Priddy Aff. ¶ 6). Plaintiffs did not respond directly to this evidence; rather Plaintiffs cite to the TransUnion reinvestigation reports provided to them regarding a dispute they filed. (Filing No. 42 at 2). The TransUnion report, however, indicates that the challenged information was provided to the credit reporting agency by RAB, not United. (Filing No. 1-4 at 2 and 5). Other than a conclusory statement that United hired RAB to collect the debt and that United is responsible for RAB's actions, Plaintiffs provide no evidence that United furnished any data about any debt to a credit reporting agency. Further, Plaintiffs provide no legal support to impute RAB's actions with respect to the requirements of the FCRA to United. Therefore, the court must conclude that United is not a data furnisher and cannot be held liable to Plaintiffs under the FCRA.

The portion of *Edeh v. Midland Credit Management, Inc.* that Plaintiffs rely upon to support their FCRA claim does not change the outcome. Plaintiffs cite the following paragraph:

> The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver. Consistent with the views of the FTC—and consistent with the views expressed in *Purnell [v. Arrow Fin. Servs., LLC*, 303 Fed. Appx. 297, 303 n.5 (6th Cir. 2008)], *Quale [v. Unifund CCR Partners*, 682 F. Supp. 2d 1274, 1278 (S.D. Ala. 2010)], and *Semper [v. JBC Legal Group*, 2005 WL 2172377, *4 (W.D. Wash. Sept. 6, 2005)]—the Court finds that Midland was engaged in "collection of the debt" in violation of § 1692g(b) when it reported Edeh's

> disputed debt to the [credit reporting agencies] before sending verification of that debt to Edeh.

*Edeh*, 748 F. Supp. 2d at 1035-36.  Plaintiffs appear to argue that United should be liable under the FDCPA because it allowed RAB to report the debt to the credit reporting agencies even though United knew the debt was disputed.  (Filing No. 42 at 4-5).  In other words, United violated the FDCPA.  As discussed in the previous section, however, United is not a debt collector; therefore, the FDCPA does not apply to it.  Further, as discussed in this section, United does not furnish information to credit reporting agencies, and Plaintiffs have presented no evidence to prove that United may be held vicariously liable for the acts of RAB with respect to credit reporting.  Therefore, this theory of liability under the FDCPA also fails as a matter of law.

In Count V of the Complaint, Plaintiffs cite to §§ 1681n and 1681o of the FCRA.  (Filing No. 1 at 5-6).  However, those sections merely provide the types of damages available to a consumer if they prove that a covered entity either willfully violated the FCRA, § 1681n, or negligently violated the FCRA, § 1681o.  Plaintiffs provide no factual support in Count V.  Further, in response to United's Motion for Summary Judgment on Count V, Plaintiffs state, "Defendants were repeatedly negligent both directly and vicariously through hired agents."  (Filing No. 42 at 5).  In the absence of factual support for their allegations that United either willfully or negligently violated the FCRA as discussed above, summary judgment in favor of United on Count V is appropriate.

## IV. Plaintiffs' Claims Against the Koch Defendants

Plaintiffs concede that Counts I, II, III and V do not pertain to the Koch Defendants. (Filing No. 43 at 2). Therefore, the Koch Defendants are entitled to summary judgment on those Counts.

In Count IV, Plaintiffs allege that the Koch Defendants' response to their dispute was insufficient to validate the debt. (Filing No. 1 at 5). More specifically, in response to the Koch Defendants' evidence that they complied with the validation requirements of the FDCPA, Plaintiffs contend that the Koch Defendants violated § 1692g of the FDCPA when they failed to contact Wells Fargo after Plaintiffs disputed the debt. (Filing No. 43 at 2). Further, Plaintiffs claim that the Koch Defendants performed "continuous collection activities on disputed portions of the debt," which Plaintiffs also seem to assert violates § 1692g. *Id.*

The evidence of what the Koch Defendants did in response to Plaintiffs' dispute is not refuted and the remaining issue is a legal one: whether or not § 1962g required the Koch Defendants' to contact Wells Fargo to validate the debt. Section 1962g provides that if a consumer disputes a debt or requests verification of the debt, the debt collector must provide verification of the debt to the consumer before it may continue collection activity. 15 U.S.C. § 1962g(b). The best articulation of what constitutes sufficient verification is set forth by the Fourth Circuit in *Chaudhry v. Gallerizzo*: "[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." 174 F.3d 394, 406 (4th Cir. 1999)

12

(citing *Azar v. Hayter*, 874 F. Supp. 1314, 1317 (N.D. Fla.), *aff'd*, 66 F.3d 342 (11th Cir. 1995), *cert. denied*, 516 U.S. 1048 (1996)).  *See also*, *Recker v. Cent. Collection Bureau, Inc.*, No. 1:04-cv-2037-WTL-DFH, 2005 WL 2654222, at *2 (S.D. Ind. Oct. 17, 2005) (finding sufficient validation a computerized statement that "informed the debtor of the amounts of his debts, the services provided, and the dates on which the debts were incurred" (discussing *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) citing *Chaudhry*, 174 F.3d at 406)); *Zaborac v. Mut. Hosp. Serv., Inc.*, No. 1:03-cv-01199-LJM-WTL, 2004 WL 2538643, at *2-3 (S.D. Ind. Oct. 7, 2004) (stating that "[a] written confirmation that [the debt collector] was demanding what the creditor claimed was owed would have been sufficient" to verify the relevant debt).  In this case, the Koch Defendants provided the Sheriff's deed, the Clerk return, the Summary Judgment Entry and Decree of Foreclosure, and the United Explanation of Benefits.  Those documents, taken together with the cover letter that specifically explained how the deficiency balance was calculated, are sufficient as a matter of law to provide validation of the debt because they confirm that the Koch Defendants were demanding the amount that United claimed was owed.

Further, to the extent that Plaintiffs believe that § 1962g(b) required the Koch Defendants to contact the original creditor, Wells Fargo, to validate the debt owed to United, the Court can find no case law to support such a requirement and Plaintiffs have cited none.

For these reasons, the Court concludes that summary judgment in favor of the Koch Defendants on Count IV of Plaintiffs' Complaint is proper.

## V.     Conclusion

The court finds no genuine issue of material fact exists on Plaintiffs' claims against any of the Defendants.  Accordingly, Defendant United Guaranty Residential Insurance Co.'s Motion for Summary Judgment (Filing No. 35) is **GRANTED**; and Defendants', Koch Law Firm, P.C. and Jason McAuley, Motion for Summary Judgment (Filing No. 27) is **GRANTED**.  The court will enter judgment accordingly.

**SO ORDERED** this 2nd day of March 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.

Distribution by U.S. Mail to:

SUZANNE E. CANNON
6170 W. Deer Run Drive
New Palestine, IN 46163

JEFFREY A. CANNON, JR.
6170 W. Deer Run
New Palestine, IN 46163